IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Misc Action No.: __25 mc 26__

RE: U.S. District Court for Southern District of Iowa

Case Number 3:22-cv-00015-SMR-HCA

Nuhn Industries Ltd.,

v.

Bazooka-Farmstar, LLC.

**MEMORANDUM OF LAW IN SUPPORT OF
<u>NON-PARTY ROBERT BRUNET'S MOTION TO QUASH SUBPOENA</u>**

I.  INTRODUCTION

Non-party Robert Brunet files this Memorandum of Law in Support of his motion to quash, or in the alternative modify, Bazooka Farmstar, Inc.'s subpoena for deposition served upon him ("the Brunet Subpoena") for both lack of personal jurisdiction to enforce and pursuant to Fed. R. Civ. P. 45(d)(3).

A district court may enforce a non-party subpoena only where the court has personal jurisdiction over the non-party. Mr. Brunet is a Canadian citizen and non-resident of the United States. As explained below, Bazooka cannot meet its burden to show personal jurisdiction over Mr. Brunet to enforce the subpoena.

Further, the Court must quash or modify the subpoena because it imposes an undue burden by seeking an *unbounded* deposition of Mr. Brunet—Nuhn Industries, Ltd.'s patent agent and Canadian citizen—in the United States under Rule 45 **when his deposition is already slated to go forward in Canada by mutually terms agreed by the parties**, pursuant to a Consent Order filed with the Superior Court of Justice of Ontario. The testimony that Bazooka seeks from Mr. Brunet in the U.S. is thus readily available in Canada. There is no need for Bazooka's broad Rule 45 subpoena, which is a wasteful attempt to harass Mr. Brunet in the United States and likely delve into privileged, confidential, and other irrelevant matters.

II.  BACKGROUND

A.  **Nuhn's Three Lawsuits Against Bazooka**

Nuhn Industries, Ltd. ("Nuhn") filed a first lawsuit for patent infringement against Bazooka Farmstar, LLC in the Eastern District of Wisconsin ("*Nuhn I*") *See* Ex. 1 to Decl. of Michael P. Kella (*Nuhn I* Compl.).[1] The District Court for the Eastern District of Wisconsin transferred *Nuhn*

---

[1] All exhibits cited herein are to the accompanying Declaration of Michael P. Kella filed in support of this motion.

1

*I* to the Southern District of Iowa. *See* Ex. 2 (Transfer Ord.) at ECF Page 7. *Nuhn Industries Ltd, v. Bazooka Farmstar LLC*, Case No. 21-cv-1322, Doc. 37 (E.D. Wisc. Mar. 17, 2022). Nuhn subsequently filed two related patent infringement against Bazooka in the Southern District of Iowa ("*Nuhn II and III*"). *See* Ex. 3(*Nuhn II* Compl.); Ex. 4 (*Nuhn III* Compl.). The District Court for the Southern District of Iowa then consolidated *Nuhn I, II, and III* as *Nuhn Industries Ltd, v. Bazooka Farmstar LLC*, Case No. 3:22-cv-15. *See* Ex. 5 (Nuhn II Consolidation Order); Ex. 6 (*Nuhn III* Consolidation Order).

B.   **Bazooka's Bid to Depose Robert Brunet**

Mr. Brunet is a patent agent who prosecuted Nuhn's applications that issued from the United States Patent and Trademark Office ("USPTO) as the patents-in-suit, pursuant to his limited USPTO registration. Decl. of Robert Brunet ("Brunet Decl.") at ¶¶ 8–10. Mr. Brunet is a Canadian citizen who resides in Canada. *Id.* at ¶ 2 He is the principal and founder of the Brunet & Co.—a patent and trademark agency in Canada. *See id.* at ¶ 4 Ex. 7 (Brunetco.com, Team Page); Ex. 8 (Brunetco.com, Home Page).

Recognizing that Bazooka could not obtain deposition testimony from a foreign citizen like Mr. Brunet in the United States,[2] Bazooka filed a motion requesting that the District Court issue a request for international judicial assistance to the Superior of Court Justice of the Province of Ontario, Canada—*i.e.*, a letter rogatory.[3] *See* Ex. 9 (Mot. for Issuance of Req.); Ex. 10 (Br. in

---

[2] *See* Fed. R. Civ. P. 45(b)(1) (providing that a subpoena to a foreign citizen may only be served at a place within the United States).

[3] *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004); Barnes & Noble, Inc. v. LSI Corp., No. C 11-2709 EMC (LB), 2012 U.S. Dist. LEXIS 69355, at *5 (N.D. Cal. May 17, 2012) ("A letter rogatory is a formal written request sent by a court to a foreign court asking that the testimony of a witness residing within that foreign court's jurisdiction be taken pursuant to the direction of that foreign court and transmitted to the requesting court for use in a pending action.").

2

Support of Motion for Issuance of Request) at pp. 1. In support, Bazooka argued that Mr. Brunet has knowledge relevant to (i) an alleged defect in the priority chain the patents-in-suit, (ii) the existence of certain alleged prior art to the patents-in-suit, and (iii) an alleged decision not to submit such art to the USPTO. Ex. 10 (Br. in Support of Motion for Issuance of Request) at pp. 1, 7, 10. According to Bazooka, these matters are relevant to Bazooka's claim against Nuhn for inequitable conduct. *See id.* at pp. 2.

The District Court granted Bazooka's motion and issued a letter rogatory to the Superior Court of Justice of Ontario on July 22, 2024, requesting an order for the issuance of a subpoena for the deposition testimony of Mr. Brunet. *See* Ex. 11 (Req. for Intl'l Judicial Assistance) at p. 1. Bazooka submitted an Application to the Superior Court of Justice for Ontario on October 4, 2024 for the Ontario Court to give effect to the District Court's letter rogatory. *See* Ex. 12 (Application) at pp. 3.

### C. The Parties' Stipulated Agreement for the Canada Deposition

Mr. Brunet did not file an opposition to Bazooka's Application to give effect to the District Crout's letter rogatory. Rather, Mr. Brunet through counsel engaged in a cooperative meet and confer process that ultimately resulted in a mutually-agreed Consent Order securing Bazooka's deposition of Mr. Brunet in Canada ("the Canada Deposition"). *See* Ex. 13 (May 7, 2025 Email from D. Chu). The Consent Order is attached as Ex. 14. On information and belief, Bazooka filed the Consent Order with the Ontario Superior Court on May 7, 2025.[4] The parties agreed in the Consent Order for Bazooka to take Mr. Brunet's deposition in accordance with the terms set forth in Paragraph 1, summarized as follows:

---

[4] Bazooka did not provide an "as-filed" copy of the Consent Order, but confirmed on May 7, 2025 that it would be filing the Consent Order the same afternoon. *See* Ex. 13 (May 7, 2025 Email from D. Chu, attaching Consent Order, Ex. 14, for filing).

- *Time limits.* The Canada Deposition will be limited to a maximum of 4 hours (thus reserving up to 3 hours for cross examination by Mr. Brunet's counsel);

- *Protections.* Questions seeking privileged information need not be answered; questions need not be answered if they require revealing information related to Mr. Burnet's clients other than Nuhn;

- *Logistics.* The Canada Deposition will be transcribed by a court reporter, video-taped, and governed by the U.S. Federal Rules of Civil Procedure (with the propriety of any refused question to be determined by the Ontario Court if required);

- *Topics.* The topics for deposition will be limited to Topics 1–6 set out in Schedule "B" of the letter rogatory, which generally relate to (i) the alleged defect in the priority chain of the patents-in-suit, (ii) alleged prior art to the patents-in-suit, and (iii) and alleged nondisclosure of prior art, *see* Ex. 11 (Request for Int'l Judicial Assistance) at ECF Page 17–19); and

- *Location.* The Canada Deposition will occur at the Toronto office of Mr. Brunet's Canadian counsel (or as otherwise agreed by the parties).

*See* Ex. 14 (Consent Order) at ¶ 1.

The parties have been prepared to go forward with the Canada Deposition once the Ontario Superior Court enters the Consent Order—or potentially sooner subject to Bazooka's agreement.

### D.  Bazooka's Subsequent Rule 45 Airport Subpoena

Despite all parties agreeing to the Canada Deposition terms, Bazooka subsequently hired a process server on May 16, 2025 to serve Mr. Brunet with a Rule 45 deposition subpoena—after Mr. Brunet deboarded an airplane on arrival to San Diego, California for the 2025 Annual Meeting

of the International Trademark Association ("the Brunet Subpoena"). *See* Ex. 15 (Brunet Subpoena); Ex. 16 (May 22, 2025 Email from J. Dubis).

Counsel for Mr. Brunet communicated its surprise that Bazooka would serve Mr. Brunet with a Rule 45 deposition subpoena in this manner given the parties' prior agreement to proceed with the Canada Deposition and thus sought clarification on Bazooka's intent. Ex. 17 (May 28, 2025, 9:36AM Email from M. Kella).

Bazooka responded that it served Mr. Brunet to "ensure a prompt and efficient taking of Mr. Brunet's deposition ahead of the July 1, 2025 discovery cut-off" in this case and that it would withdraw its application for the Canada Deposit upon conclusion. Ex. 18 (May 28, 2025, 10:49 AM Email from J. Dubis). So, as a compromise to expedite scheduling of the Canada Deposition, counsel for Mr. Brunet confirmed that he is willing to proceed with the Canada Deposition before the July 1 discovery cut-off, if Bazooka agrees to withdraw the Brunet Subpoena and conduct the Canada Deposition in accord with the Consent Order's agreed terms pending its entrance by the Ontario Superior Court. Ex. 19 (May 29, 2025, 1:15 PM Email from M. Kella); Ex. 20 (May 29, 2025, 7:44 PM Email from M. Kella.

Bazooka refused to engage on a compromise for its duplicative discovery tactics to obviate the need for motion practice, refused to suggest a counterproposal, and rejected Mr. Brunet's proposals for efficient deposition practice in Canada before the discovery cut-off.

## III. RELEVANT LAW

### A. Personal Jurisdiction

A district court may enforce a non-party subpoena only where the court has personal jurisdiction over the non-party. *See Bizelia v. Clinton Towers Mgmt.*, No. 20-CV-8065 (JPC) (OTW), 2024 U.S. Dist. LEXIS 184646, at *4 (S.D.N.Y. Oct. 9, 2024) ("[A] district court may

5

enforce a non-party subpoena where (1) the court has personal jurisdiction over the non-party and (2) the information sought in the subpoena is relevant and material to the case.").

To lawfully exercise personal jurisdiction, a federal court must satisfy three primary requirements: (1) there must be proper service, (2) there must be a statutory basis to exercise personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process. *Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 U.S. Dist. LEXIS 142404, at *9 (S.D.N.Y. Sep. 1, 2017). "[A] federal court must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." *Id.* (internal citations and quotations omitted).

It is incumbent upon the party seeking third-party discovery to make out a prima face case of jurisdiction. *See Sandstone Springs, LLC v. Virag Distribution, LLC*, 617 F. Supp. 3d 159, 167 (W.D.N.Y. 2022) ("Plaintiff bears the burden, by preponderance of the evidence, of demonstrating the existence of personal jurisdiction over Defendant . . . ."); *see also Laydon v. Mizuho Bank, Ltd.*, 2015 U.S. Dist. LEXIS 44007, at *27 (S.D.N.Y. Mar. 31, 2015) ("District courts in this Circuit routinely reject requests for jurisdictional discovery where a plaintiffs allegations are insufficient to make out a prima facie case of jurisdiction," cleaned up); *see also Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689 (7th Cir. 2017).

### B.  Motions to Quash

Fed. R. Civ. P. 45(d)(3)(A)(iv) requires that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . subjects a person to undue burden." "Courts consider the following factors when making the undue burden determination: (1) relevance; (2) the party's need for the information; (3) the breadth of the request; and (4) the burden imposed." *Strike 3 Holdings, Llc v. Doe*, 337 F. Supp. 3d 246, 252 (W.D.N.Y. 2018). While the movant bears the burden of persuasive in a motion to quash a subpoena, "[u]ltimately, decisions

6

about the reasonableness and burden of a subpoena are left to the sound discretion of the court." *Id.* at 251.

Fed. R. Civ. P. 45(d)(3)(A)(iii) also requires courts to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." And Fed. R. Civ. P. 45(d)(3)(B)(i) permits courts to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information."

## IV. ARGUMENT

### A. The Court Lacks Personal Jurisdiction to Enforce the Brunet Subpoena

The Court should quash the Brunet Subpoena based alone on the lack of personal jurisdiction to enforce the Brunet Subpoena. Mr. Brunet is a non-party, Canadian citizen. Brunet Decl. at ¶ 1. He does not reside in the New York. *Id.* at ¶ 2. He resides in Canada and works for a Canadian patent agency. *Id.* at ¶¶ 2–4. And his work for Nuhn—a Canadian company—has been from Canada. *Id.* at ¶¶ 6–10. Mr. Brunet's only arguable connection to this case is that he prosecuted patent applications for Nuhn from Canada pursuant to his limited registration with the USPTO.

Bazooka cannot meet its burden to show a statutory basis to exercise personal jurisdiction over Mr. Brunet and that the exercise of personal jurisdiction over Mr. Brunet comports with constitutional due process in view of Mr. Brunet's complete lack of any relevant connection to New York and limited activity before the USPTO. Canada is the appropriate jurisdiction for Mr. Burnet's deposition pursuant to the letters rogatory process and the parties agreed Consent Order. *See id.* at ¶ 11.

### B. The Brunet Subpoena Imposes an Undue Burden and Should Be Quashed

Apart from the personal jurisdiction issues, the Brunet Subpoena is clear and straightforward case of undue burden under Rule 45(d)(3)(A)(iv). The Court should quash it.

7

The "burden" and "breadth" factors compel quashing. Bazooka seeks Mr. Brunet's deposition due its asserted relevance to (i) an alleged defect in the priority chain the patents-in-suit, (ii) the existence of certain alleged prior art to the patents-in-suit, and (iii) an alleged decision not to submit such art to the USPTO. Ex. 10 (Br. in Support of Motion for Issuance of Request) at pp. 1, 7, 10. Bazooka agreed to terms in the Consent Order that provide for ample time, scope, and opportunity to take Mr. Brunet's testimony on these matters.[5] Ex. 14 (Consent Order) at ¶ 1 (citing topic Schedule B attached to District Court's Request for Int' Judicial Assistance, Ex. 11 at ECF Pages 17–19).

At the same time, these terms importantly protect Mr. Brunet from an unbounded, 7-hour fishing expedition into irrelevant and privileged matters, like (a) questions about information related to Nuhn's privileged matters,[6] (b) privileged and confidential matters concerning Mr. Brunet's *other* clients besides Nuhn,[7] and (c) other unnecessary questions that have no relevance

---

[5] It defies logic that an aggressive litigant like Bazooka would have agreed to terms insufficient for it purposes.

[6] Mr. Brunet's status as a patent agent, as opposed to a patent lawyer, does not strip his communications and activities of privilege or work product protection. *See In re Queen's Univ.*, 820 F.3d 1287, 1298 (Fed. Cir. 2016) (recognizing a patent-agent privilege where "[a] client has a reasonable expectation that all communications relating to obtaining legal advice on patentability and legal services in preparing a patent application will be kept privileged," internal quotations omitted); *see also Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Notwithstanding the common description of the doctrine as the 'attorney' work product doctrine . . . it is not in fact necessary that the material be prepared by or at the direction of an attorney."); *Regents of the Univ. of Minn. V. United States*, 340 F.R.D. 293, 303-304 (D. Minn. 2021) ("While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer."); *United States v. ISS Marine Serv.*, 905 F.Supp.2d 121, 134 (D.C. Cir. 2012) ("[A]lthough the doctrine is known as the attorney work-product doctrine, work product created by non-attorneys can also be protected if it is 'so intertwined with the legal analysis as to warrant protection.'") (emphasis in original); *Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-cv-03424-JCS, 2016 U.S. Dist. LEXIS 179966, at *30 (N.D. Cal. Dec. 29, 2016) (acknowledging the work product doctrine's applicably to patent prosecution materials prepare with an eye towards litigation).

[7] *Id.*

to either the patent-in-suit or prior art related to the patent-in-suit. Bazooka's refusal to abide by the agreed terms of the Consent Order wreaks of intent to harass. These tactics will undoubtedly prolong Mr. Brunet's deposition and risk the need for further court intervention. It would thus be extremely burdensome to subject Mr. Brunet to an extended 7-hour deposition of unlimited breadth under Rule 45. The "need" factor also compels quashing the Rule 45 subpoena. The terms for the Canada Deposition were sufficient for Bazooka when the parties agreed to the Consent Order, and remain sufficient now. Four hours for the Canada Deposition will provide ample time for Bazooka to ask questions on appropriate topics while reserving 3 hours for his counsel's cross-examination—a full 7-hour day. Absent intent to inappropriately delve into confidential matters of Mr. Brunet's other clients, disrespect privilege, or waste time on irrelevant matters, Bazooka has no reason to pursue an unbounded deposition. To the extent that Bazooka so intends, Nuhn moves the Court to quash the Brunet Subpoena on the additional grounds of Rule 45(d)(3)(A)(iii) and (d)(3)(B)(i).

Indeed, the parties have already expended time and effort to reach agreement on how Mr. Brunet's deposition is to proceed in Canada, where his citizenship enjoys protections under Canada's laws. Forcing a new Rule 45 subpoena on Mr. Brunet at the San Diego airport during his travels and requiring him to sit for a different deposition in the United States tells of motivation to harass.

Further compounding the burden is Mr. Brunet's status as a patent agent in Canada who has represented Nuhn—a Canadian company—in with respect to matters related to the protection of the invention of the patents-in-suit. Brunet Decl. at ¶ 9. Nuhn thus enjoys the protection of Canada's laws on patent agent privilege codified under Section 16.1 of the *Patent* Act, RCS 1985, c-P-4 (attached as Ex. 21 at pp. 10/122). Subjecting Mr. Brunet to deposition in the United States

9

will undoubtedly risk disputes requiring court intervention on application and interpretation of Canada's law on patent agent privilege.[8] Canada is far better suited to interpret its own laws on privilege. And the Consent Order provides for appropriate resolution by the Ontario Superior Court to the extent necessary. *See* Ex. 14 (Consent Order) at ¶ 1(g) ("[T]he propriety of any refused question on the basis of privilege shall be determined by [the Ontario Superior Court], if required question.").

The final "relevance" factor does not alter the analysis. Here, it is unnecessary to debate Bazooka's characterization of the scope of Mr. Brunet's relevant knowledge. Any arguably relevant testimony is sufficiently accessible by Bazooka in Canada pursuant to the agreed terms for the Canada Deposition.

For these reasons, the Court should quash the Brunet Subpoena in its entirety under Rule 45(d)(3).

### C. In the Alternative to Quashing, The Brunet Subpoena Should Be Modified to Comport with the Parties' Agreed Consent Order for the Canada Deposition

The Court has no duty to modify the Brunet Subpoena in lieu of quashing it. *See Donohue v. Nostro*, No. 20-CV-6100-EAW-MJP, 2022 U.S. Dist. LEXIS 173579, at *15 (W.D.N.Y. Sep. 26, 2022) ("Notwithstanding the court's power to modify subpoenas, it has no duty to modify the request itself; a court is free to quash a subpoena . . . ."). But if the Court is not inclined to quash the Brunet Subpoena in its entirety and leave the parties to proceed with Mr. Brunet's deposition

---

[8] Mr. Brunet does not concede that the U.S. privilege laws apply over Canada's laws. *See Sudenga Indus. v. Glob. Indus.*, No. 18-2498-DDC, 2020 U.S. Dist. LEXIS 85692, at *8-9 (D. Kan. May 15, 2020) ("Courts in the Second Circuit use the 'touch base' approach, applying the law of the country that has the predominant or the most direct and compelling interest in whether the communications should remain confidential, unless that foreign law is contrary to the public policy of this forum. Generally, the country with the predominant issue is the place where the allegedly privileged relationship was entered into," internal citations omitted).

in Canada pursuant to the agreed Consent Order, the Court should modify the Burnet Subpoena to require that his deposition go forward in accordance with the terms of the Consent Order. *See* Ex. 14 (Consent Order). There is simply no need for the parties' effort in reaching agreement on these terms to be set aside in favor of Bazooka's unnecessary and harassing discovery tactics in the United States.

### D.  The Motion to Quash is Timely

A motion to quash a subpoena is timely made when filed prior to the time specified in the subpoena for compliance. *Power Auth. of N.Y. ex rel. Solar Liberty Energy Sys., Inc. v. Advanced Energy Indus., Inc.*, No. 19-cv-01542(LJV)(JJM), 2024 U.S. Dist. LEXIS 235336, at *3 (W.D.N.Y. Apr. 22, 2024) (citing *Estate of Tillman by Tillman v. City of New York*, 345 F.R.D. 379, 385 (E.D.N.Y. 2024) ("[T]he Second Circuit's view is clear and established. A motion to quash a subpoena must be made prior to the return date of the subpoena—that is, prior to the time specified in the subpoena for compliance.")). Here, Mr. Brunet's motion to quash is timely filed prior to the Brunet Subpoena's June 5, 2024 compliance date. *See* Ex. 15 (Brunet Subpoena).

### V.  CONCLUSION

For these reasons, the Court should quash, or in the alternative modify, Bazooka's wasteful deposition subpoena to Robert Brunet for both lack of personal jurisdiction to enforce and under Rule 45(d)(3), and leave the parties to proceed with his deposition in Canada as previously agreed.

Dated: June 4, 2025

Respectfully submitted,

*s/ William G. Bauer*
William G. Bauer, Esq.
WOODS OVIATT GILMAN LLP
1900 Bausch & Lomb Place
Rochester, New York 14604
585.987.2800
wbauer@woodsoviatt.com